# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROGER SHEKAR and MONICA SHEKAR, | ) |
| Plaintiffs, | ) Case No. 18-cv-3019 |
| v. | ) Judge Sharon Johnson Coleman |
| OCWEN LOAN SERVICES, LLC, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pro se plaintiffs Roger and Monica Shekar ("the Shekars") brought the present amended complaint dated March 11, 2019, against their loan servicing company, defendant Ocwen Loan Services, LLC ("Ocwen"), in relation to real property located at 15 Eagle Court in Streamwood, Illinois. Ocwen has moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants in part and denies in part Ocwen's motion to dismiss with prejudice. The Court does not grant the Shekars leave to amend the dismissed counts because the Shekars already had the opportunity to amend their pleadings. *See Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015) (there is a "presumption in favor of giving plaintiffs at least one opportunity to amend."). As such, the only remaining claim in this lawsuit is the Shekars' breach of contract claim as alleged in Count I.

**Background**

In setting forth the background facts, the Court construes the Shekars' pro se amended complaint liberally, *see Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019), and considers documents incorporated by reference in the pleadings. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

In October 2003, the Shekars entered into a promissory note and executed a mortgage as security in the amount of $282,000.00. Originally, the mortgage provided that the Shekars were to pay amounts for escrow items such as taxes and insurance, along with principal and interest. In 2014, Ocwen became the Shekars' loan servicing company, and in 2016, the Shekars directed Ocwen to convert their loan to a "non-escrow" account.

On September 23, 2016, Ocwen's counsel sent a letter to the Shekars explaining the status of their escrow account:

> Based on your recent emails, we understand that you have requested to remove the escrow for taxes and insurance from your account, so you will only pay principal and interest to Ocwen. To accommodate your request, Ocwen has now taken steps to remove the escrow from your account…. Because your account is no longer escrowed, you owe Ocwen $698.49 to reimburse it for the August 8, 2016 real estate tax payment. Further, you will be responsible for all future payments of taxes and insurance.

(R. 134-2, Mot., Ex. 2, 9/23/16 letter.) In their amended complaint, the Shekars also discuss a letter that Ocwen sent them on October 5, 2016, which stated in relevant part:

> Prior to the removal of the escrow account, the August 1, 2016 and September 1, 2016 payments received did not satisfy the full amount owed, as you did no include any funds for escrow. As mentioned in the September 23, 2016 response, the escrow account had a negative balance owed of $698.49. To pay this balance in full, please send a check or money order, with your Ocwen account number on it, to the below address. If this balance is not repaid, it will be added to your payment in monthly installments until repaid.
>
> …
>
> Ocwen is unable to comply with your request for reimbursement of $1,077.00 for the insurance payment you made due to the negative balance in the escrow account. This negative balance was created as more funds have been disbursed from escrow than have been received, as reflected on the enclosed transactional history.

(Ex. 3, 10/5/16 letter, at 1.)

The Shekars allege that they do not owe the tax debt of $698.49, and thus they did not repay this amount to Ocwen. Instead, the Shekars contend that when Ocwen closed the escrow account, there was a positive balance because they had made an insurance payment of $1,077.00. Meanwhile,

because the Shekars refused to pay the negative balance of $698.49, Ocwen "re-escrowed" their account pursuant to Section 3 of the mortgage. Thereafter, the Shekars did not pay any escrow amounts.

Attached to the Notice of Removal are the Shekars' state court filings and attachments, including delinquency notices from Ocwen in relation to the Shekars' mortgage payments. These notices indicate that the Shekars failed to pay the principal and interest due on their monthly mortgage payments starting in April 2017 through August 2017. On November 26, 2018, Ocwen instituted foreclosure proceedings in the Circuit Court of Cook County. In the interim, the Shekars filed this lawsuit in the Circuit Court of Cook County, Law Division, after which Ocwen removed this case on April 27, 2018.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). At this procedural posture, the Court "may take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings." *Orgone Capital III*, 912 F.3d at 1044. To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

*Breach of Contract Claim*

In Count I of their amended complaint, the Shekars allege that Ocwen amended their mortgage contract by the letters sent to them in September and October 2016 regarding the escrow account. They further allege that Ocwen breached this "September Agreement" by asserting that they had failed to pay the $698.49 shortfall. Ocwen does not argue that the letters are not an enforceable contract, but rather, that the negative balance of $698.49 in the escrow account shows that the Shekars failed to plausibly allege their performance under the contract. The October 2016 letter, however, also refers to the $1,077.00 insurance payment the Shekars made. Viewing the allegations in the Shekars' favor, Ocwen has not established as a matter of law that the Shekars did not perform their contractual obligations as required for their breach of contract claim because the October 2016 letter mentions the $1,077.00 insurance payment that forms the basis of the Shekar's assertion that there was a positive escrow balance due. *See Columbia Coll. Chicago*, 933 F.3d at 858. The Court therefore denies Ocwen's motion to dismiss Count I.

*Illinois Mortgage Escrow Account Act Claims*

Next, in Count II, the Shekars seek a "refund of interest monies" based on their allegations that from September 2003 until September 2016 they paid money into their mortgage escrow account and that Ocwen invested these amounts in interest bearing portfolios. They now claim that they are entitled to the interest income on their mortgage escrow account under the Illinois Mortgage Escrow Account Act, 765 ILCS 910/1 ("the Act"), as alleged in Count V.

Contrary to the Shekars' claims, the Act does not provide for interest bearing escrow accounts. *See Olsen v. Financial Federal Sav. & Loan Ass'n*, 434 N.E.2d 406, 410, 61 Ill.Dec. 253, 257, 105 Ill.App.3d 364, 368 (1st Dist. 1982). Rather, the Act provides for interest bearing certificates of deposit *in lieu* of escrow accounts. *Id.*; *Stern v. Norwest Mortgage, Inc.*, 672 N.E.2d 296, 298, 219

Ill.Dec. 788, 790, 284 Ill.App.3d 506, 507 (1st Dist. 1996); *see also* 765 ILCS 910/6. The Shekars do not allege that they had any such certificate of deposit, but are specifically seeking interest on their escrow account. Under the Act and Illinois case law, the Shekars' claims for interest and damages are untenable, and thus the Court grants Ocwen's motion to dismiss Counts II and V.

*Illinois Consumer Fraud and Deceptive Business Practices Act Claim*

In Count III, the Shekars bring a claim under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). *See* 815 ILCS 505/1, *et seq*. "To recover on a claim under the Act, a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019).

The Shekars allege that Ocwen's counsel made a deceptive statement in the September 23, 2016 letter when he stated that they owed $698.49 due to the shortfall in their escrow account. They further allege that Ocwen's "fabricated" shortfall constitutes a deceptive business practice because Ocwen was seeking amounts that were not due. The Shekars, however, have not alleged—nor could they—that they relied on this deceptive act. To the contrary, the Shekars repeatedly refused to pay the $698.49 shortfall because they claim they paid $1,077.00 into the escrow account for homeowner's insurance. In short, the Shekars were not deceived by Ocwen's allegedly deceptive conduct. *See Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017). The Court grants Ocwen's motion as to Count III.

*Illinois Collection Agency Act Claim*

In Count IV, the Shekars bring a claim based on the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/9, in which they allege that Ocwen violated the Act by "[c]ommunicating with third parties, including credit reporting bureaus, without prior written consent of Plaintiffs or a court order, or disclosing information adversely affecting an individual's creditworthiness knowing

5

the information to be false, or failing to disclose that the individual disputes the debt, knowing that Plaintiffs did," among other allegations. (Am. Compl. ¶ 44.) (internal citations omitted).

The overwhelming majority of courts in this district have concluded that there is no private right of action under § 9 of the ICAA. *See, e.g., Ali v. Portfolio Recovery Assoc., LLC,* No. 15 C 6178, 2018 WL 4760284, at *10 (N.D. Ill. Sept. 30, 2018) (Coleman, J.); *Johnson v. Alltran Educ., LP,* No. 2018 WL 2096374, at *10 (N.D. Ill. May 7, 2018) (St. Eve, J.); *Skinner v. LVNV Funding, LLC*, No. 16 C 7089, 2018 WL 319320, at *4 (N.D. Ill. Jan. 8, 2018) (Aspen, J.); *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537, at *18 (N.D. Ill. Mar. 30, 2017) (Castillo, J.). The Court finds these cases persuasive and adopts their reasoning. Therefore, the Shekars cannot bring their private claim against Ocwen. Count IV is dismissed.

*Tort Claims*

The Shekars also bring three claims sounding in tort, including tortious interference with contract, defamation, and intentional infliction of emotional distress in Counts VI, VII, and VIII. Ocwen contends that these claims are barred by Illinois' economic loss doctrine to the extent they are based on negligence. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 61 Ill.Dec. 746, 91 Ill. 2d 69 (Ill. 1982). "Known as the *Moorman* doctrine in Illinois, this doctrine bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). In response, the Shekars correctly assert that Illinois' economic loss doctrine does not bar certain tort claims, including tortious interference with contract and other intentional torts. *See Cromeens, Holloman, Sibert, Inc v. AB Volvo,* 349 F.3d 376, 398 (7th Cir. 2003).

The basis of the Shekars' tortious interference with contract claim is that in March or April 2017, Ocwen informed their homeowner's insurer, Farmer's Insurance Group, that their home was vacant, after which Farmer's cancelled their insurance policy. "To state a claim for tortious

6

interference with contract, a plaintiff must allege facts sufficient to establish: (1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018).

The Shekars take issue with the fact that their house was never vacant during the relevant time period because one or both of them were always at home. To contradict this argument, Ocwen asks the Court to take judicial notice of the Illinois Appellate Court's March 2019 ruling in *Shekar v. Doshi*, which involved Roger Shekar's accusation that a Circuit Court of Cook County judge was corrupt. In that ruling, the Illinois Appellate Court noted that the Cook County Sheriff's Office had repeatedly attempted to serve Roger Shekar at home and that Shekar evaded service of process by refusing to open the door to his residence on different days in March 2017. *See Shekar v. Doshi*, 2019 IL App (1st) 170967-U, ¶ 9, 2019 WL 1472387, at *2 (1st Dist. 2019). Although the Court can take judicial notice of matters of public record, that Roger Shekar avoided service of process sometime in March 2017 does not establish that the Shekars cannot bring their tortious interference claim as a matter of law. It merely explains why the inspector, insurer, Ocwen, or Ocwen's agents may have concluded that the Shekars' house was vacant.

The Shekars bigger problem is they have failed to plausibly allege that Ocwen intentionally induced Farmer's breach of the insurance contract. Under Illinois law, "[i]ntent to induce 'requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way.'" *Webb*, 906 F.3d at 579. The Shekars allege that Ocwen "knew" that they were living at their home and that Ocwen informed Farmer's that the house was vacant. Construing the pleadings liberally, there is no mention or inference to be drawn that Ocwen actively encouraged or persuaded Farmer's to cancel the homeowner's policy. As such, the Shekars have failed to state a claim of tortious interference of contract.

Next, in support of their defamation claim, the Shekars contend that stickers were posted on their home in March through May 2017, which implied that they had abandoned their home and left it vacant. The stickers stated a "recent inspection" of the house indicated that it "may be vacant." The stickers further stated: "In accordance with applicable law and/or regulatory requirements, this notice is an attempt to determine if the property is occupied. Please contact us within 7 days of the posting date of this notice to confirm occupancy." The Shekars claim that these stickers were left on their front door for all the world to see.

To state a defamation claim in Illinois, a plaintiff must allege that the defendant made a false statement about him, that the defendant made an unprivileged publication of that statement to a third party, and that the publication of the statement caused damages. *Board of Forensic Document Exam'r, Inc. v. Am. Bar Assoc.*, 922 F.3d 827, 831 (7th Cir. 2019). "A defamatory statement is one that harms a person's reputation by lowering him in the community's eyes or deterring the community from associating with him." *Razavi v. School of the Art Institute of Chicago*, 122 N.E.3d 361, 367, 428 Ill.Dec. 352, 358, 2018 IL App (1st) 171409, ¶ 19 (1st Dist. 2018).

That a "recent inspection" of the Shekars' home indicated that it "may be vacant" is not a false statement, and falsity is a required element of a plaintiff's defamation claim. *Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 587, 391 Ill.Dec. 302, 317, 2015 IL App (1st) 140534, ¶ 34 (1st Dist. 2015). Taking judicial notice of the fact that Roger Shekar evaded service at some point in March 2017, that an Ocwen inspector thought the house "may be vacant" after a visual inspection is an accurate statement. Accurate statements are not actionable under Illinois defamation law. *See Voyles v. Sandia Mortgage Corp.,* 751 N.E.2d 1126, 1133, 256 Ill.Dec. 289, 296, 196 Ill.2d 288, 300 (Ill. 2001).

Similarly, the Shekars contend Ocwen falsely reported to the credit bureaus that they were 60 days late with their mortgage payments starting in 2017. As an attachment to the pleadings indicate, the Shekars failed to pay the principal and interest due from at least April 2017 through

8

August 2017. The Shekars were thus in default under the terms of their mortgage, and consequently the reports to the credit bureau were not false. The Court grants Ocwen's motion to dismiss the Shekars' defamation claim alleged in Count VII.

Finally, the Shekars bring an intentional infliction of emotional distress claim arguing that Ocwen's conduct in servicing their mortgage was calculated to cause emotional distress and did so by "driving the plaintiffs to wit's end for worry at the loss of their home." The Shekars also assert that they were "exposed to shame and humiliation before their neighbors and the world."

To bring an intentional infliction of emotional distress claim, the Shekars must allege that "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel Corp.*, 869 F.3d 557, 566 (7th Cir. 2017). "[T]he Illinois Supreme Court has held that "'to qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society."' *Id.* (quotation omitted). "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities are not actionable as intentional infliction of emotional distress." *Zoretic v. Darge*, 832 F.3d 639, 645 (7th Cir. 2016) (citation omitted).

The Shekars have failed to allege that Ocwen's conduct was truly extreme and outrageous. In a similar lawsuit, the Seventh Circuit held that allegations where a mortgage servicer "failed to apply [plaintiff's] monthly mortgage payments properly and incorrectly reported his loan as delinquent" did not rise "to the level of 'extreme and outrageous' conduct that would be sufficient to support a claim under Illinois law." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438-39 (7th Cir. 2009).

Likewise, the Shekars' allegations of emotional distress are not sufficiently severe. "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684, 239 Ill.Dec. 148, 153, 306 Ill.App.3d 148, 155 (1st Dist. 1999) (citation omitted). Given Illinois' high standard, the Shekars' allegations do not withstand Ocwen's motion to dismiss, and the Court dismisses Count VIII. In fact, courts have dismissed far worse allegations of intentional infliction of emotional distress than the allegations set forth by the Shekars. *See, e.g., Honaker v. Smith*, 256 F.3d 477, 496 n.18 (7th Cir. 2001).

**Conclusion**

For the foregoing reasons, the Court grants in part and denies in part defendant's Rule 12(b)(6) motion to dismiss. [133].

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 11/12/2019